## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| ERICA **and** KODY BLYTHE**, individually and as next friends and guardians of H.B., a minor,** | § § § § | |
| **Plaintiffs,** | § § | |
| | § | **Case No. 6:12-CV-36** |
| **vs.** | § § | |
| | § | **JURY DEMANDED** |
| BUMBO INTERNATIONAL TRUST F/K/A JONIBACH MANAGEMENT TRUST**,** **and** TARGET CORPORATION**,** | § § § § | |
| **Defendants.** | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Erica and Kody Blythe, individually and as next friends and guardians of H.B., a minor, (collectively "PLAINTIFFS") hereby file their Original Complaint, and complain of Defendants Bumbo International Trust f/k/a Jonibach Management Trust ("BUMBO")  and TARGET CORPORATION ("TARGET") as follows:

## JURISDICTION AND VENUE

1.      The present action alleges strict products liability, negligence and bystander liability arising out of PLAINTIFFS' use of the BUMBO BABY SITTER.

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

3.      The Court has personal jurisdiction over each Defendant.  Each Defendant has conducted and does conduct business within the State of Texas. Each Defendant contracts with Texas entities and does business within the State of Texas.  Moreover, each Defendant, directly

and/or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and/or advertises the BUMBO BABY SITTER, in the United States, the State of Texas, and the Southern District of Texas. Each Defendant has purposefully and voluntarily placed the BUMBO BABY SITTER into the stream of commerce with the expectation that it will be purchased by consumers in the Southern District of Texas. The BUMBO BABY SITTER has been and continues to be purchased by consumers in the Southern District of Texas. In addition, BUMBO has purposefully availed itself of the courts of Texas, voluntarily answering lawsuits and filing lawsuits in various federal district courts and state courts within the southern district of Texas. And, TARGET owns and operates well over a dozen retail stores within the Southern District of Texas wherein it employs Texas residents and wherein it sold the BUMBO BABY SITTER to residents in the Southern District of Texas. And, on August 6, 2012, The Honorable Gregg Costa of this Court also found that BUMBO was subject to general personal jurisdiction in Texas in *O'Neal v. Bumbo (Pty.) Ltd. et. al*; Civil Action No. 6:11-cv-00072.

4.      Venue is proper in this District under 28 U.S.C. § 1391(a)(1) because Defendants "reside" in the Southern District of Texas - as that term is defined by 28 U.S.C. § 1391(c) - because Defendants are subject to personal jurisdiction in the Southern District of Texas.

## PARTIES

5.      PLAINTIFFS Erica and Kody Blythe, individually and as next friends and guardians of their daughter, H.B., are individuals who reside in and are citizens of Quinlan, Texas.  PLAINTIFFS resided in Quinlan, Texas at the time they received the BUMBO BABY SITTER, and they resided in Quinlan, Texas the time that PLAINTIFFS were injured by the BUMBO BABY SITTER.

6.     Bumbo International Trust f/k/a/ Jonibach Management Trust (now trading as Bumbo International) is a South African entity based in Gauteng, South Africa, with its place of business at 212 Hardy Muller Street, PO Box 3081, Rosslyn 0200, Gauteng, South Africa BUMBO does not maintain a registered agent within the State of Texas despite selling hundreds of thousands of products here. South Africa is not a party to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as the Hague Service Convention. Nor is South Africa a signatory to <u>any</u> treaty with the United States that would allow service of process through more traditional means. Accordingly, service may be had upon BUMBO by serving the Secretary of State for the State of Texas via the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.044, who may forward service to BUMBO at its principal office located at 212 Hardy Muller Street, PO Box 3081, Rosslyn 0200, Gauteng, South Africa, for all of the following reasons: (1) The Secretary of State is an agent for BUMBO, who is a non-resident; (2) BUMBO engaged in business in Texas by selling thousands of BUMBO BABY SITTERS in Texas, including the BUMBO BABY SITTER that caused Plaintiffs' injuries; (3) BUMBO does not maintain a regular place of business in Texas; (4) Bumbo does not have a designated agent for service of process; and, (5) this lawsuit arises from BUMBO's business in Texas, in particular, this lawsuit arises because BUMBO sold the BUMBO BABY SITTER at issue to PLAINTIFFS in Texas, and PLAINTIFFS were injured as a result.

7.     TARGET is incorporated in the State of Minnesota and has its principal place of business at 1000 Nicollet Mall, Minneapolis MN 55403.  TARGET may be served by serving its registered agent for service of process, C.T. Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201.

## FACTUAL ALLEGATIONS

8.     The BUMBO BABY SITTER is designed for use exclusively by infants. Specifically, the BUMBO BABY SITTER was designed and marketed "to seat babies independently in an upright sitting position from as young as 3 months up to an age of approximately 14 months . . . thereby providing a snug and cozy environment for your baby."

9.     The BUMBO BABY SITTER was actively marketed for use on elevated surfaces. In fact, website photos initially depicted the BUMBO BABY SITTER being used on top of tables, countertops, and even on top of a piano bench.  And, the very box in which the BUMBO BABY SITTER was originally sold contained a picture of three infants sitting in BUMBO BABY SITTERS on top of a table, at a birthday party, with cake and balloons.  There are no adults anywhere in the birthday party photograph:



10.     The BUMBO BABY SITTER was also advertised as being "your extra set of hands," and was advertised as "promotes eye-level interaction."  Moreover, the BUMBO BABY SITTER was marketed as being safe to use "on any flat surface."   In fact, the following

photograph, which appears to show a mother feeding a baby on top of a table, was also on the BUMBO box, and appeared on websites advertising the BUMBO BABY SITTER for sale:



A.   **The Consumer Products Safety Commission Recalled The Bumbo Baby Sitter for the First Time on October 25, 2007.**

11.    After receiving twenty-eight (28) reports of children falling out of BUMBO BABY SITTERS, including reports of three skull fractures, the U.S. Consumer Product Safety Commission (the "CPSC") recalled the BUMBO BABY SITTER on October 25, 2007.  On that date, the CPSC issued a press release stating: "Serious Head Injuries Prompt Recall of BUMBO Baby Sitter Seats - New Warnings and Instructions to Be Provided To Consumers."[1]  As part of the first recall, the CPSC mandated that new warnings be placed on the BUMBO BABY SITTER and that the photographs of the birthday party be removed from the BUMBO BABY SITTER's packaging because those photographs could lead consumers to believe that it was safe to use the BUMBO BABY SITTER on elevated surfaces.

---

[1] See Exhibit A, a copy of the CPSC website press release concerning the recall.

**B.** **Children Continue to Be Injured After the Recall.**

12.     In spite of the October 2007 recall, and the changes that were made to the BUMBO BABY SITTER's warning language, children continued to be seriously injured while using the product.  In fact, as of May 2010, BUMBO was aware of more than 200 incidents where infants had come out of the BUMBO BABY SITTER.[2]  Recognizing that the recall measures were not enough, in November 2011, four years after the initial recall, the CPSC issued a press release warning consumers that children were continuing to be seriously injured by the BUMBO BABY SITTER despite the added warning language and removal of the birthday party photo from the box.  In fact, the CPSC's own news release shows more reported injuries from the BUMBO BABY SITTER after the recall than before.[3]  Specifically, after the 2007 recall, there were at least 45 reports of children being injured by falling out of BUMBO BABY SITTERS that were being used on elevated surfaces – including 17 more skull fractures.  And, there were an additional 50 reports of infants falling out of BUMBO BABY SITTERS that were being used on the floor and other unknown elevations – including two reports of skull fractures on the floor, and one report of a concussion.  Clearly, the initial recall did nothing to alleviate the dangerous nature of the BUMBO BABY SITTER.  The ineffectiveness of the "warnings only" recall is plainly demonstrated by the fact that more children were injured after the recall than before.[4]

**C.** **4,000,000 Bumbo Baby Sitters are Recalled in August of 2012 so That a Seat-Belt Can be Added to Make the Product Safe.**

13.     In the face of continuing injuries to children, and the realization that new warnings had done nothing to prevent or even slow down injuries caused by the BUMBO BABY

---

[2] See Exhibit F, a table of customer complaints received by BUMBO.
[3] See Exhibit B, November 22, 2011 News Release from the CPSC.
[4] See Exhibit C, March 15, 2012 Article from the Chicago Tribune, "Grave Concerns about baby seat," by Julie Deardorff.

SITTER, on August 15, 2012, the CPSC announced that 4 million Bumbo Baby Sitter seats – which amounts to every single BUMBO BABY SITTER seat sold in the United States from 2003 through 2012 - were being recalled because a seatbelt had to be added to the product to make it safe.[5] The CPSC cited all of the incidents that had occurred since the October 2007 recall as the reason for the mandatory design modification. Per the 2012 recall, consumers with BUMBO BABY SITTER seats were required to stop using their BUMBO products immediately until they could obtain a seatbelt kit from BUMBO and install it on the BUMBO BABY SITTER.  Although it came more than 10 years later than it should have, the BUMBO BABY SITTER will, now, finally be equipped with a simple seatbelt that will prevent countless injuries to children.

**D.    <u>The Incident</u>**

14.    In 2010, PLAINTIFFS received the BUMBO BABY SITTER as a gift from a friend.  Erica Blythe registered for the BUMBO BABY SITTER as part of her baby registry at TARGET.  The BUMBO BABY SITTER was given to the PLAINTIFFS during one of their baby showers by a friend who purchased it from Erica Blythe's registry at TARGET.

15.    On September 9, 2010, H.B. was put into the BUMBO BABY SITTER and placed on top of the kitchen table.  She was being supervised by her mother, Erica Blythe, who was sitting right in front of her at the kitchen table – a specific use of the BUMBO BABY SITTER that BUMBO's own corporate representatives have endorsed.  H.B. was eight months old at the time.  Suddenly and without warning, H.B pushed with her feet and flipped out of the BUMBO BABY SITTER, off of the table and onto the concrete kitchen floor.  H.B. suffered an inverted skull fracture as a result of her fall.  Plaintiffs immediately rushed H.B. to the hospital,

---

[5] See Exhibit D, August 15, 2012 News Release from the CPSC.

and as a result of her injuries, H.B. was transported from there by ambulance to Children's Hospital in Dallas, Texas, where she received extensive medical treatment for her injuries.

**E.    Erica Blythe Witnessed the Incident.**

16.    Erica Blythe was sitting directly in front of her daughter when H.B. fell out of the BUMBO BABY SITTER. Erica Blythe witnessed the entire event. Unfortunately, Erica Blythe was not able to react quickly enough to stop her daughter's devastating fall.

17.    Erica Blythe suffered emotional distress and anxiety as a result of witnessing her child's horrible fall and resulting injuries.

18.    At the time PLAINTIFFS received and used the BUMBO BABY SITTER, it was defective and unsafe for its intended purpose. Specifically, the BUMBO BABY SITTER was designed in a manner that would allow a child such as H.B. to easily get out of the seat. Moreover, the BUMBO BABY SITTER was marketed as being safe to use "on any flat surface." The BUMBO BABY SITTER was also marketed for use on elevated surfaces, such as a kitchen table. The BUMBO BABY SITTER did not contain a safety harness or straps to hold H.B. in place. And the BUMBO BABY SITTER did not adequately apprise reasonable consumers, such as PLAINTIFFS, of the dangers associated with using the product, whether on the floor or on elevated surfaces. Plainly, the BUMBO BABY SITTER failed to perform as safely as PLAINTIFFS, as ordinary consumers, would expect when they used it in its intended and reasonably foreseeable manner. As a result, H.B. was seriously injured.

**F.    BUMBO Had Actual Knowledge That The BUMBO Baby Sitter Was Defective and Not Safe And That The Recall Was Ineffective.**

19.    By October 25, 2007, the CPSC had received twenty-eight (28) reports of serious injuries; yet, BUMBO was aware of sixty-eight (68) reports of children falling out of the BUMBO BABY SITTER by that time. And, despite telling the world that the recall was "The

Lamest Recall In The History Of The World…"[6] BUMBO continued to receive reports of children falling out and injuring themselves.  In fact, by 2010, when PLAINTIFFS received the BUMBO BABY SITTER, BUMBO had received more than ninety (90) reports of children falling out and/or injuring themselves, including dozens more complaints coming in <u>after</u> the recall.[7] And, on November 22, 2011, the CPSC issued a press release stating that BUMBO was aware of at least 45 more incidents in which infants fell out of a BUMBO seat while it was being used on an elevated surface, after the October 25, 2007 recall.[8]

### G. Target Had Actual Knowledge That The Bumbo Baby Sitter Was Not Safe Yet It Continued To Sell It To The Public – Including The Blythes.

20.     TARGET learned of the recall of the BUMBO BABY SITTER on October 25, 2007, when it received a copy of the CPSC press released stating that it had received twenty-eight (28) reports of serious injuries, including three children suffering skull fractures from falling out of the BUMBO BABY SITTER. As a result of the October 2007 recall, TARGET had actual knowledge that the BUMBO BABY SITTER was defective (i.e. that children were falling out of the BUMBO BABY SITTER and seriously injuring themselves because the BUMBO BABY SITTER did not properly restrain them and was not safe).

21.     TARGET has also been sued in multiple lawsuits around the time of the October 2007 recall wherein TARGET continued to learn about additional children who had been injured because of the BUMBO BABY SITTER's defective design and defective warnings. Specifically, TARGET was a defendant in *Stanley v. Bumbo et al.*, which was filed in the Southern District of Texas on October 31, 2007, in *Lamm v. Bumbo et al.*, which was filed in the Northern District of California on August 16, 2007, and in *Mix v. Target et al.*, which was filed in the Western

---

[6] See Exhibit E, a copy of an article posted on BUMBO's website on December 29, 2007.
[7] See Exhibit F, a table of customer complaints received by BUMBO.
[8] See Exhibit B, a press release from the CPSC dated November 22, 2011.

District of Texas on October 10, 2009.  In all of these cases, the Plaintiffs alleged that the BUMBO BABY SITTER was defectively designed and marketed.  And, in all of these cases, TARGET was provided with documents, including expert reports that evidenced literally dozens and dozens of complaints of injuries to children that both BUMBO and the CPSC had received regarding the BUMBO BABY SITTER, none of which had been made public. Thus, there is no question that at the time that TARGET sold the BUMBO BABY SITTER to PLAINTIFFS' friend in 2010, TARGET had actual knowledge that the BUMBO BABY SITTER was defective, and that more than fifty (50) reported incidents of children coming out of the Bumbo Baby Sitter had been catalogued.

## CAUSES OF ACTION AGAINST BUMBO

### COUNT I
### STRICT PRODUCTS LIABILITY OF BUMBO –
### DESIGN DEFECT AND MARKETING DEFECT

22.     PLAINTIFFS incorporate herein the allegations of paragraphs 1 through 21.

23.     The BUMBO BABY SITTER in question was originally designed, manufactured, marketed, and sold by BUMBO.

24.     At the time that the BUMBO BABY SITTER was sold, BUMBO was in the business of designing, manufacturing, marketing, and selling BUMBO BABY SITTERS, such as the BUMBO BABY SITTER in question.

25.     BUMBO is the "manufacturer" in question of the BUMBO BABY SITTER within the meaning of Section 82.001(4) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE.

26.     BUMBO is liable under the doctrine of strict liability for placing the BUMBO BABY SITTER in question into the stream of commerce and is liable for the injuries produced

by the defects in the BUMBO BABY SITTER in question, including the injuries of PLAINTIFFS.

27.     At the time that the BUMBO BABY SITTER was designed, manufactured, marketed and sold by BUMBO, it was defective in design and unreasonably dangerous as designed.

28.     There was a design defect in the BUMBO BABY SITTER at the time that it left the possession of BUMBO in that it was designed in such a way that would allow a child such as H.B. to easily fall out of the seat.  Moreover, the BUMBO BABY SITTER suffered from an additional design defect in that it did not contain a safety harness or seatbelt to prevent a child such as H.B. from falling out.  These defects, both singularly and in concert, rendered the BUMBO BABY SITTER unreasonably dangerous.  Further, these defects were a producing cause of the accident and injuries suffered by PLAINTIFFS.

29.     A safer alternative design existed at the time that PLAINTIFFS' BUMBO BABY SITTER was manufactured.  Specifically, BUMBO could have incorporated a safety harness, seatbelt or other securing device into the BUMBO BABY SITTER that would sit low and tight across the child's hips.  An example of a safer alternative design that BUMBO could have incorporated  is as follows:



This, and possibly other design improvements, would have prevented a child like H.B. from falling out of the BUMBO BABY SITTER.

30.    The dangerous nature of the BUMBO BABY SITTER, as described above, was not contemplated by reasonable persons who would be considered expected users or consumers of the product, such as H.B. and H.B.'s parents, and the BUMBO BABY SITTER was unreasonably dangerous to H.B. and Plaintiffs as users of the product.

31.    The BUMBO BABY SITTER was used by PLAINTIFFS in a way that was reasonably expected by Defendants, including its use on a table surface. Defendants had extensive knowledge of prior similar accidents at the time this BUMBO BABY SITTER.  In fact, Defendants actively marketed the BUMBO BABY SITTER for use in this manner.

32.    At the time of the accident, the BUMBO BABY SITTER was in substantially the same condition as it was at the time it was placed into the stream of commerce.  PLAINTIFFS made no modifications to the BUMBO BABY SITTER after it was received, and no modifications were made since its purchase.

33.     Further, there is no applicable mandatory federal standard that applies to the specific defects complained of herein.  But to the extent that BUMBO attempts to rely on defenses or rebuttable presumptions that the BUMBO BABY SITTER was not defectively designed because it complied with all applicable Federal Standards, PLAINTIFFS allege that the Federal Standards are inadequate to protect of children using the BUMBO BABY SITTER in a foreseeable manner.

34.     In addition, at the time that the BUMBO BABY SITTER was designed, manufactured, marketed and sold by BUMBO, it was defective and unreasonably dangerous as marketed.  The BUMBO BABY SITTER contained a marketing defect because BUMBO and retailers such as TARGET actively marketed the BUMBO BABY SITTER for use on elevated surfaces without adequately warning consumers of the risks associated with using the BUMBO BABY SITTER on elevated surfaces.  BUMBO is strictly liable for this marketing defect because: (1) there was a serious risk of harm associated with using the BUMBO BABY SITTER on an elevated surface, (2) BUMBO was actually aware of the risk associated with such a use, but it failed to adequately warn consumers of the risk of using the product in that manner, (3) the BUMBO BABY SITTER possessed a marketing defect because it contained wholly inadequate warnings regarding the serious injuries that a child could suffer if the BUMBO BABY SITTER was used on an elevated surface, (4) the absence of the warning or instructions rendered the BUMBO BABY SITTER unreasonably dangerous to the ultimate consumer of the product, including PLAINTIFFS, and (5) BUMBO's failure to adequately warn or instruct was a producing cause of PLAINTIFFS' injuries and damages.

## COUNT II
## NEGLIGENCEOF BUMBO

35.     PLAINTIFFS incorporate herein the allegations of Paragraphs 1 through 34.

36.     BUMBO committed acts of omission and commission, which collectively and severally constituted negligence, and which were a proximate cause of the injuries to PLAINTIFFS.

37.     BUMBO's acts of negligence include, but are not limited to the following:

(a)     Negligently designing the BUMBO BABY SITTER such that a child using the BUMBO BABY SITTER in a foreseeable manner could fall out;

(b)     Negligently designing the BUMBO BABY SITTER without a safety harness or seatbelt;

(c)     Negligently marketing the BUMBO BABY SITTER as safe to use on elevated surfaces;

(d)     Negligently marketing the BUMBO BABY SITTER by promoting its use on elevated surfaces;

(e)     Negligently marketing the BUMBO BABY SITTER by failing to adequately warn consumers of the risks and dangers associated with using the BUMBO BABY SITTER on elevated surfaces; and

(f)     Negligently failing to test the BUMBO BABY SITTER to ensure that children using it in a foreseeable manner could not fall out.

38.     BUMBO clearly possessed a duty to parents of infants such as the PLAINTIFFS and infants such as H.B. to provide and manufacture a safe product and provide proper warnings. BUMBO breached that duty, causing an inverted skull fracture and other injuries to H.B. and emotional distress to Erica Blythe, and is liable for PLAINTIFFS' resulting damages.

39.     At the time of the accident, the BUMBO BABY SITTER was in substantially the same condition as it was when it was placed into the stream of commerce.  PLAINTIFFS made

no modifications to the BUMBO BABY SITTER after it was received, and there were no modifications to the product from the time it was purchased.

### COUNT III
### BYSTANDER LIABILITY AND
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY BUMBO

40.     PLAINTIFFS incorporate herein the allegations of Paragraphs 1 through 39.

41.     At the time of the accident, Erica Blythe, H.B.'s mother, was sitting at the kitchen table with H.B., who was in the BUMBO BABY SITTER. Erica Blythe was within inches of H.B., and she directly witnessed H.B.'s accident and resulting injuries.

42.     Erica Blythe suffered severe physical shock and emotional distress from the direct emotional impact that occurred from her sensory and contemporaneous observation of her daughter's accident and resulting severe injuries. She continues to suffer emotional distress and anxiety to the present day as a result of this experience. As such, Erica Blythe is entitled to damages for the emotional distress and mental anguish that she suffered as a result of the accident and injuries to her daughter.

### CAUSES OF ACTION AGAINST TARGET

### COUNT IV
### STRICT PRODUCTS LIABILITY OF TARGET

43.     PLAINTIFFS incorporate herein the allegations of Paragraphs 1 through 42.

44.     The BUMBO BABY SITTER in question was sold by TARGET.

45.     At the time that TARGET sold the BUMBO BABY SITTER, TARGET was in the business of selling BUMBO BABY SITTERS, such as the BUMBO BABY SITTER in question.

46.     TARGET is the "seller" in question of the BUMBO BABY SITTER within the meaning of Section 82.001(3) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE.

47.     TARGET is liable under the doctrine of strict liability for placing the BUMBO BABY SITTER in question, which was defective as designed and marketed, into the stream of commerce and is liable for the injuries produced by the defects in the BUMBO BABY SITTER in question, including the injuries of PLAINTIFFS.

48.     At the time that TARGET supplied the BUMBO BABY SITTER to PLAINTIFFS' friend, TARGET actually knew of a defect to the BUMBO BABY SITTER. Specifically, TARGET had actual knowledge of the following defects: (1) that the BUMBO BABY SITTER did not restrain children, (2) that children could and had fallen out, (3) that children had fractured their skulls as a result of falling out, (4) that children had been injured by falling out of the product, (5) that the BUMBO BABY SITTER did not have a restraint to keep the children in the BUMBO BABY SITTER, (6) that it was the only infant seat of which TARGET was aware that did not have a safety restraint, (7) that the warnings for the BUMBO BABY SITTER were defective because children were continuing to be injured in spite of the products warning language, and (8) that the BUMBO BABY SITTER was not safe for use.

49.     Despite having actual knowledge of the defective nature of the BUMBO BABY SITTER, TARGET sold the BUMBO BABY SITTER that PLAINTIFFS used.

50.     TARGET is liable to the PLAINTIFFS because it had actual knowledge of the defects in the BUMBO BABY SITTER at the time that it supplied it to PLAINTIFFS' friend and that defect actually caused the PLAINTIFFS' harm.

51.     At the time of the accident, the BUMBO BABY SITTER was in substantially the same condition as it was at the time it was placed into the stream of commerce.  PLAINTIFFS

made no modifications to the BUMBO BABY SITTER after they received it as a gift from a friend who purchased it at TARGET.

## COUNT V
## NEGLIGENCE OF TARGET

52.     PLAINTIFFS incorporate herein the allegations of Paragraphs 1 through 51.

53.     The BUMBO BABY SITTER in question was sold by TARGET.

54.     At the time that TARGET sold the BUMBO BABY SITTER, TARGET was in the business of selling BUMBO BABY SITTERS, such as the BUMBO BABY SITTER in question.

55.     TARGET committed acts of omission and commission, which collectively and severally constituted negligence, which were a proximate cause of the injuries to PLAINTIFFS.

56.     TARGET's acts of negligence include, but are not limited to the following:

(a)     Negligently failing to verify that the BUMBO SEAT was safely designed, and adequately tested by BUMBO prior to offering it for sale to consumers;

(b)     Negligently failing to ensure that the BUMBO SEAT conformed to basic engineering and industry standards prior to offering it for sale to consumers; and

(c)     Negligently failing to inquire whether BUMBO knew of any injuries to children using the BUMBO BABY SITTER prior to offering it for sale to consumers.

57.     At the time of the accident, the BUMBO SEAT was in substantially the same condition as it was when it was placed into the stream of commerce. PLAINTIFFS made no modifications to the BUMBO SEAT after they received it as a gift from a friend who purchased

it at TARGET.  TARGET is liable for the aforementioned acts of negligence, all of which caused PLAINTIFFS' injuries.

58.     At the time that TARGET supplied the BUMBO BABY SITTER to PLAINTIFFS' friend, TARGET actually knew of a defect to the BUMBO BABY SITTER. Specifically, TARGET had actual knowledge of the following defects: (1) that the BUMBO BABY SITTER did not restrain children, (2) that children could and had fallen out, (3) that children had fractured their skulls as a result of falling out, (4) that children had been injured by falling out of the product, (5) that the BUMBO BABY SITTER did not have a restraint to keep the children in the BUMBO BABY SITTER, (6) that it was the only infant seat of which TARGET was aware that did not have a safety restraint, (7) that the warnings for the BUMBO BABY SITTER were defective because children were continuing to be injured in spite of the products warning language, and (8) that the BUMBO BABY SITTER was not safe for use.

59.     Despite having actual knowledge of the defective nature of the BUMBO BABY SITTER, TARGET sold the BUMBO BABY SITTER that PLAINTIFFS used.

60.     TARGET is liable to the PLAINTIFFS' because it had actual knowledge of the defects in the BUMBO BABY SITTER at the time that it supplied it to PLAINTIFFS' friend and that defect actually caused the PLAINTIFFS' harm.

## COUNT VI
## BYSTANDER LIABILITY OF TARGET

61.     PLAINTIFFS incorporate herein the allegations of Paragraphs 1 through 60.

62.     At the time of the accident, Erica Blythe, H.B.'s mother, was sitting at the kitchen table with H.B., who was in the BUMBO BABY SITTER. Erica Blythe was within inches of H.B., and she directly witnessed H.B.'s accident and resulting injuries.

63.     Erica Blythe suffered severe physical shock and emotional distress from the direct emotional impact that occurred from her sensory and contemporaneous observation of her daughter's accident and resulting severe injuries. She continues to suffer emotional distress and anxiety to the present day as a result of this experience. As such, Erica Blythe is entitled to damages for the emotional distress and mental anguish that she suffered as a result of the accident and injuries to her daughter.

## PUNITIVE DAMAGES AGAINST BUMBO

64.     PLAINTIFFS incorporate herein the allegations of Paragraphs 1 through 63.

65.     In 2002, long before BUMBO began selling the BUMBO BABY SITTER in the United States, BUMBO was alerted to the fact that its product needed a seatbelt.  In particular, in 2002, when BUMBO submitted the BUMBO BABY SITTER for testing to T.U.V. – an international testing agency – the BUMBO BABY SITTER failed its certification test because even though the product was designed to seat infants, it did not contain a seatbelt to ensure that its infant occupants were securely held in place. Rather than looking at ways in which to redesign the BUMBO BABY SITTER with a seatbelt, BUMBO ignored the unfavorable test result, and resubmitted the BUMBO BABY SITTER to T.U.V. for testing under the "toy" category, where the seatbelt requirement was removed from the testing parameters.  As expected, the BUMBO BABYSITTER passed once BUMBO improperly categorized it as a "toy" and tested it as a baby rattle or stuffed animal would be tested, and BUMBO began selling its product worldwide.

66.     BUMBO knew as early as 2004 that children were falling out of the BUMBO BABY SITTER.  BUMBO also knew, as early as 2004, that in conjunction with its marketing of the BUMBO BABY SITTER, parents were using the product on elevated surfaces, such as tables

and chairs, and BUMBO was also actually aware that children were falling from these elevated surfaces and suffering serious injuries.  BUMBO continued to receive numerous complaints of this nature in the years that followed.  In fact, as BUMBO'S sales of the BUMBO BABY SITTER increased, so did the complaints about the BUMBO BABY SITTER'S defects.  By the time that PLAINTIFFS received their BUMBO BABY SITTER in 2010, BUMBO had received over 90 complaints of children falling out of the BUMBO BABY SITTER, including multiple reports of skull fractures and other serious bodily injuries.

67.     Despite having actual knowledge of the dangers associated with the BUMBO BABY SITTER, and direct personal knowledge that the BUMBO BABY SITTER was causing serious injuries to children, BUMBO refused to undertake any effort to evaluate a re-design of the BUMBO BABY SITTER to add a simple seatbelt to prevent children from getting out of it. This is despite the fact that BUMBO was actually aware of hundreds of incidents where children had fallen out and in many cases, were seriously injured using the BUMBO BABY SITTER. Had BUMBO effectively evaluated its design, warnings and/or marketing materials prior to PLAINTIFFS' use of the BUMBO BABY SITTER, PLAINTIFFS' injuries could have been prevented.

68.     BUMBO'S acts and omissions – failing to review, evaluate, and change its marketing, warnings and design of the BUMBO BABY SITTER - involved an extreme degree of risk – serious injury to children – and demonstrated a willful and wanton disregard for the rights and safety of others. BUMBO'S conduct also deviated from the normal standard of care undertaken by a manufacturer of products intended for use by children.  BUMBO was aware that children were getting out of the BUMBO BABY SITTER.  BUMBO was also aware of the magnitude of the potential harm that children, such as H.B., were likely to suffer as a result.  At

the time of H.B.'s accident, BUMBO was actually aware of the real likelihood that children such as H.B. could be seriously injured using the BUMBO BABY SITTER.  Despite this, BUMBO did nothing to reduce or prevent the injuries of H.B. and other children like her.  BUMBO's behavior was especially egregious and makes it necessary to penalize BUMBO with excess damages.  As such, BUMBO acted with gross negligence and conscious disregard for H.B.'s safety, and is liable for punitive damages.

## PUNITIVE DAMAGES AGAINST TARGET

69.     PLAINTIFFS incorporate herein the allegations of Paragraphs 1 through 68.

70.     TARGET had actual knowledge that children were getting out of the BUMBO BABY SITTER at least by October 2007, if not earlier.  Despite this, TARGET continued to sell the BUMBO BABY SITTER both on-line and in its stores without doing any investigation into BUMBO or the BUMBO BABY SITTER.  Specifically, TARGET failed to verify that BUMBO had tested the BUMBO BABY SITTER to ensure that it complied with both industry and regulatory standards.  Further, neither prior to or since offering the BUMBO BABY SITTER for sale has TARGET verified that the BUMBO BABY SITTER was designed in accordance with industry or regulatory standards.  This is despite the fact that TARGET had never done business with BUMBO, a foreign company, prior to selling the BUMBO BABY SITTER in the United States. TARGET requires that it own-brand products (products that are designed and sold exclusively at TARGET) meet rigorous regulatory and voluntary industry standards, but it wholly failed to ensure that BUMBO and the BUMBO BABY SITTER did the same.

71.     Despite the fact that TARGET had never done business with BUMBO, a new company from South Africa, which was offering an infant seat with no seatbelt or restraint of any kind, TARGET required absolutely no proof whatsoever that the BUMBO BABY SITTER

met or exceeded the same rigorous regulatory and industry standards that TARGET required when it put its own name on a product.

72.     In addition, TARGET continued to market the BUMBO BABY SITTER as safe to use on any flat surface, and designed to use the baby's own weight as an anchor - giving consumers the false impression that their children could not come out of the BUMBO BABY SITTER – after TARGET was actually aware that children could, in fact, come out of the BUMBO BABY SITTER.  In the face of actual knowledge that children were falling out of the BUMBO BABY SITTER, and being seriously injured, such marketing was grossly negligent.

73.     The foregoing acts and omissions by TARGET, in the face of actual knowledge of the dangers associated with the BUMBO BABY SITTER, involved an extreme degree of risk – serious injury to children – and demonstrated a willful and wanton disregard for the rights and safety of others.  TARGET'S conduct also deviated from the normal standard of care undertaken by a retailer of products intended for use by children, including those standards that TARGET required for its own-brand children's products.  At the time of H.B.'s accident, TARGET was actually aware of dozens of injuries to children using the BUMBO BABY SITTER, and TARGET was, therefore, actually aware that children such as H.B. could be seriously injured using the BUMBO BABY SITTER.  Despite this, TARGET did nothing to investigate the safety of the BUMBO BABY SITTER and reduce or prevent the injuries of H.B. and other children like her.  As such, TARGET was grossly negligent and is liable for punitive damages.

## DAMAGES

74.     PLAINTIFFS incorporate herein the allegations of Paragraphs 1 through 73.

75.     PLAINTIFFS seek damages from Defendants arising from the injuries that H.B. suffered as a result of the accident.  Specifically, PLAINTIFFS seek damages for the following:

(a)     Past and future medical expenses of H.B.;

(b)     Past and future pain and suffering of H.B.;

(c)     Past and future mental anguish of H.B.;

(d)     Future loss of earning capacity for H.B.;

(e)     Past and future disfigurement of H.B.; and

(f)     Past and future physical impairment of H.B.

76.     PLAINTIFFS also seek damages from DEFEENDANTS arising from the emotional distress and mental anguish suffered by Erica Blythe as a result of her witnessing their daughter's horrific and terrifying accident and resulting injuries.

77.     PLAINTIFFS also seek punitive damages from DEFENDANTS.

78.     PLAINTIFFS also seek pre-judgment and post-judgment interest as provided by law.

## JURY DEMAND

79.     PLAINTIFFS request a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, that this cause of action be set for trial before a jury, and that Plaintiffs recover judgment of and from Defendants for their actual damages in such amount as the evidence may show and the jury may determine to be proper, together with pre-judgment and post-judgment interest, costs of suit, punitive damages and such other and further relief to which Plaintiffs may show themselves justly entitled, whether at law or in equity.

Respectfully submitted,

**DATED:  August 24, 2012**                    /s/ M. Ross Cunningham_____
                                               M. Ross Cunningham
                                               Attorney-in-Charge
                                               Texas State Bar No. 24007062
                                               Southern District of Texas Bar No. 34405
                                               **ROSE WALKER, L.L.P.**
                                               3500 Maple Ave., Suite 900
                                               Dallas, TX 75219
                                               Telephone: (214) 752-8600
                                               Facsimile:  (214) 752-8700
                                               rcunningham@rosewalker.com

Of Counsel:
Elizabeth M. Cunningham
Texas State Bar No. 24008069
Southern District No. 27809
**ROSE WALKER, L.L.P.**
3500 Maple Ave., Suite 900
Dallas, TX 75219
Telephone: (214) 752-8600
Facsimile:  (214) 752-8700
lcunningham@rosewalker.com

Adam K. Pulaski
Texas State Bar No. 16385800
**PULASKI & MIDDLEMAN, L.L.C.**
4615 Southwest Fwy, Suite 850
Houston, TX 77027
Telephone: (713) 664-4555
Facsimile:  (713) 664-7543
adam@pulaskilawfirm.com