UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| ERICA BLYTHE, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 6:12-CV-36 |
| | § | |
| BUMBO INTERNATIONAL TRUST | § | |
| F/K/A JONIBACH MANAGEMENT | § | |
| TRUST, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

In this product liability action, Plaintiffs Kody and Erica Blythe assert that

their infant daughter sustained injuries after falling out of a Bumbo Baby Seat. The

Blythes sued Bumbo International Trust, because it designed and manufactured the

Bumbo Seat, and Target International Corporation, because it allegedly sold the

seat that the Blythes' daughter was sitting in at the time of the incident.  The

Blythes allege that the Bumbo Seat was defectively designed because it lacked a

restraining device and that it was defectively marketed because Bumbo failed to

adequately warn consumers not to use the seat on an elevated surface.  Target and

Bumbo assert that the Blythes' design defect and marketing defect claims should

fail because (1) the plaintiffs have not alleged a safer alternative design,[1] and (2)

---

[1] The Court denied the Defendants' summary judgment motion on the Plaintiffs' design defect
claim for the reasons explained in its oral ruling and for reasons similar to those discussed in
*O'Neal v. Bumbo Intern. Trust*, --- F. Supp. 2d ----, 2013 WL 4083281, at *7–8 (S.D. Tex. Aug.

the warnings on the Bumbo Seat itself and on the box in which it was sold, which were approved by the U.S. Consumer Product Safety Commission (CPSC), were sufficient as a matter of law.  Target also seeks the protection of a Texas statute that immunizes nonmanufacturing sellers from product liability claims unless certain exceptions are proven, one of which is when a seller has actual knowledge of a product's defect.  For the reasons explained below, the Court denies summary judgment on all claims except for the Defendants' marketing defect claim, on which summary judgment is granted because the Court concludes that the post-recall, CPSC-approved warnings are sufficient as a matter of law.[2]

## I.    BACKGROUND

The Bumbo Baby Seat is a molded foam infant seat that is designed, manufactured, and sold by Bumbo.  On October 25, 2007, Bumbo voluntarily recalled the Bumbo Seat in conjunction with the CPSC.  The 2007 recall did not address the Bumbo Seat's lack of a restraining device.  Rather, the recall was instituted to improve the Bumbo Seat's warnings. Docket Entry 14 at 9–10.  Both the pre-recall and post-recall Bumbo Seats contained a warning on the box that reads: "*WARNING: Do not use on a raised or uneven surface, as a car seat, in a bath or in other water. Bumbo™ is happiest on the floor*."  Both versions of the

---

1, 2013).

[2] The Defendants sought summary judgment on several other claims asserted by the Plaintiffs, such as claims for gross negligence. The Court denied those motions orally and does not address them in this opinion.

Bumbo Seat also contained the following warning on the seat itself:



Figure 1. Picture of warning on the back of a Bumbo Seat. Docket Entry No. 14-7.

All versions of the Bumbo Seat contained leaflets that advised consumers not to use the Bumbo Seat on an elevated surface. Beginning in October 2008, Bumbo utilized the following revised leaflet to warn consumers:



Figure 2. A post-recall Bumbo Seat leaflet. Docket Entry No. 14-6.

The most noticeable effect of the recall was that the Bumbo Seat itself now contained an additional, more prominent warning, which stated that the seat should never be used on an elevated surface.



Figure 3. Post-recall warning on a new Bumbo Seat. Docket Entry No. 14-8.

When the Bumbo Seats were recalled, Target returned its entire inventory of Bumbo Seats and replaced its inventory with post-2007 recall seats.  The Blythes received a new, post-recall Bumbo Seat as a baby shower gift from a friend in November 2009, who stated that she bought the seat off the Blythes' registry at a local Target.

On September 8, 2010, Erica Blythe was preparing dinner in her kitchen. She placed her eight-month old daughter, Hannah, on their kitchen table with her Bumbo Seat and a Play Tray, which is an accessory for the Bumbo Seat, attached. Docket Entry No. 14 at 16.  The Play Tray fits over the center pommel of the Bumbo Seat and clips under the base of the seat.  While Hannah was on the table,

she pushed her feet, arched her back, and fell down from the table along with the Bumbo Seat. *Id.* Mrs. Blythe testifies that Hannah extracted herself from the Bumbo Seat, though one of her legs may still have been in the leg opening of the seat after the fall. Hannah was taken to the hospital, where she was diagnosed with an inverted skull fracture and released the following morning. *Id.*

The Blythes filed suit against Bumbo and Target in this Court and now argue in response to the Defendants' summary judgment motions that their claims should proceed to a jury.[3]

## II.    STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

---

[3] After the Court issued its oral ruling on these motions, a jury trial was held on the surviving claims. Illustrating a point sometimes lost on defense lawyers who too often view summary judgment as the "be-all and end-all" of a case, the jury viewed the evidence in favor of the Defendants and rejected Plaintiffs' design defect and negligence claims. *See* Docket Entry No. 76.

## III.   ANALYSIS

### A. Marketing Defect

The issue raised by the Blythes' marketing defect claim is whether the new warning on the Bumbo Seat itself adequately warned the Blythes that they should not use the seat on an elevated surface.

To establish their marketing defect claim, the Blythes must prove the following:

> 1. a risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product;
> 2. the product supplier actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed;
> 3. the product contains a marketing defect;
> 4. the absence of a warning and/or instructions renders the product unreasonably dangerous to the ultimate user or consumer of the product; and
> 5. the failure to warn and/or instruct [] constitute[s] a causative nexus in the product user's injury.

*Sims v. Washex Mach. Corp.*, 932 S.W.2d 559, 562 (Tex. App.—Houston [1st Dist.] 1995, no writ).  The adequacy of a warning is generally a question of fact to be determined by a jury.  *Gerber v. Hoffmann-La Roche Inc.*, 392 F. Supp. 2d 907, 915–16 (S.D. Tex. 2005).  However, courts may grant summary judgment on inadequate warning claims when no reasonable juror could find the warning defective.  *Id.; see, e.g., Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 268 (5th Cir. 2002) (finding a warning on a prescription drug package insert regarding

possible adverse reactions to the drug sufficient as a matter of law); *Brumley v. Pfizer, Inc.*, 149 F. Supp. 2d 305, 311–12 (S.D. Tex. 2001) (granting summary judgment on a failure to warn claim and rejecting argument that using "PRECAUTION" instead of "WARNING" somehow made the product's warnings inadequate).

The Blythes rely primarily on this Court's opinion in a prior Bumbo Seat case in which the Court denied summary judgment on the plaintiffs' marketing defect claim. *See O'Neal v. Bumbo Int'l. Trust*, --- F. Supp. 2d ----, 2013 WL 4083281, at *6 (S.D. Tex. Aug. 1, 2013). In *O'Neal*, this Court evaluated a marketing defect claim involving a pre-recall Bumbo Seat. The Court denied summary judgment for several reasons. Though the pre-recall Bumbo Seat contained warnings on the box and a leaflet that also warned against use on an elevated surface, the Court noted that those warning could be considered inadequate due to some ambiguity in their content. *Id.* at *5 (noting that a warning stating that "Bumbo is happiest on the floor," could be read to mean it is happy, just less so, on an elevated surface). Turning to the lone warning on the back of the Bumbo Seat itself, the Court observed that though it, unlike the warnings then on the box, was unambiguous ("NEVER USE ON A RAISED SURFACE"), its six-point font could "make the warning inconspicuous and subject to a factual determination of inadequacy." *Id.* at *6.

By improving the warnings on the Bumbo Seat, the 2007 recall leads to a different ruling in this case. The Blythes' post-recall seat contained a new warning on the seat itself that warned consumers "Prevent Falls: Never use on any elevated surface":



Figure 4. Close-up of post-recall warning on a new Bumbo Seat. Docket Entry No. 14-8.

What the Court said in *O'Neal* about the content of the on-seat warning applies to this additional post-recall warning: "It is tough to come up with a more unequivocal warning than that." *O'Neal*, 2013 WL 4083281, at *6. And this new warning resolved the visibility issues that were the only basis in *O'Neal* for finding the on-seat warning inadequate. A large red triangle with an exclamation point in the middle draws the user's attention and below it is the word "WARNING" in all caps. The Court concludes on this undisputed factual record that there is no basis for a reasonable jury to decide that this unambiguous and conspicuous warning was insufficient.

The Blythes attempt to create a fact issue by introducing an "expert report" by Dr. Mike Wogalter, who notes that consumers could fail to heed this new warning because of "the relative small size of the print, fadeability, location, and the lack of contrast between the lettering and the product."  Docket Entry No. 22 at 22.  They argue that this report requires the Court to deny summary judgment.  But in this case in which there is no dispute about what the warnings said or how they were displayed, an expert cannot usurp the judge's role to decide whether summary judgment is warranted.  Just as courts do not allow experts to invade the province of the jury, *see, e.g.*, *Rieger v. Orlor Inc.*, 427 F. Supp. 2d 99, 104 (D. Conn. 2006) (holding an expert opinion improper when expert opined that defendant retaliated against disabled plaintiff because it improperly invaded the fact-finding province of jury), courts refuse to permit experts to invade the role of the judge in making legal determinations, *see, e.g.*, *Snyder v. Wells Fargo Bank, NA*, 2012 WL 4876938, at *5 (S.D.N.Y. Oct. 15, 2012) (excluding an overly broad expert report because it "usurp[ed] the role of the judge, the jury, and the adversary system generally"); *see also Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 512 (2d Cir. 1977) (holding that district court erred in allowing an expert to opine on the legal obligations of the parties under a contract because it infringed on the judge's "exclusive province . . . to instruct the jury on the law"); *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988) ("[W]hen the purpose of testimony is to direct the

9 / 19

jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed.  In no instance can a witness be permitted to define the law of the case.").  The Blythes' argument that their expert's opinion precludes the Court from making a legal determination on a set of undisputed facts is akin to arguing that an expert's opinion that a contract contains ambiguity overrides a judge's duty to interpret a contract, or that an expert's opinion that an employer engaged in discrimination supersedes the legal framework for deciding when circumstantial evidence is sufficient to get to a jury in an employment case.

Put another way, the adequacy of warnings—whether they give reasonable notice of dangers to consumers—on a consumer product such as the Bumbo Seat is not an issue for which a witness's "scientific, technical, or other specialized knowledge" is needed.  Fed. R. Evid. 702(a); *see also* 4 Joseph M. McLaughlin et al., WEINSTEIN'S FEDERAL EVIDENCE § 702.03[2][a] (2d ed. 2012) ("Expert testimony is generally not permitted concerning factual issues that are within the knowledge and experience of ordinary lay people, because it would not help the trier of fact to understand the evidence or determine a fact in issue."); *Kindergartners Count, Inc. v. Demoulin*, 249 F. Supp. 2d 1214, 1232 (D. Kan. 2003) (rejecting expert testimony in a copyright infringement case that two children's books were substantially similar because "the trier of fact does not need an expert to compare two literary works that are expressed in simple English" and

observing that the "expert opinion will not change what each work is on its face."); *Hoffman v. Caterpillar Inc.*, 368 F.3d 709, 713–14 (7th Cir. 2004) (finding expert testimony regarding one-handed plaintiff's ability to operate a scanner inadmissible because jury could view video of plaintiff operating scanner and decide on its own whether plaintiff could perform the task). Indeed, the retention of an expert witness on the issue whether warnings on a basic consumer product are adequate—a determination one does not need a high school education, let alone "specialized knowledge," to make—is an example of the expertization of the law that is a major contributor to the cost, complexity, and delay that plague today's civil justice system. Given that it is the Court's obligation alone to decide whether judgment as a matter of law is warranted based on a record of undisputed facts, the Court cannot cede that determination to an "expert witness" on an issue that does not require any specialized knowledge.

But even if the Court is wrong about the adequacy of the on-seat warning, the marketing defect claim fails for an additional reason: because the Blythes did not read any warnings—the ones on the box, in the instruction leaflets, or on the seat—they cannot establish the causation element of their claim. *See Foltz v. Smith & Wesson Corp.*, 2009 WL 2596598, at *3 (N.D. Tex. Aug. 20, 2009) ("Texas courts reject marketing defect claims where the plaintiff's injuries would have been avoided had the warning provided been heeded. . . .[F]ailing to read the warnings

provided negates the causal link between the alleged inadequate warnings and the user's injury.").

The Blythes attempt to overcome their failure to read the Bumbo Seat's warnings by arguing that they are entitled to a presumption that they would have followed the warnings provided by Bumbo had those warnings been adequate. However, "no presumption arises that a plaintiff would have heeded a better warning when, in fact, he did not read the warning given, which if followed would have prevented his injuries." *Stewart v. Transit Mix Concrete & Materials Co.*, 988 S.W.2d 252, 256 (Tex. App.—Texarkana 1998, pet. denied). Therefore, "[i]f following the warning and instructions actually provided would have prevented the injury despite the warning's inadequacy, the deficiency could not be the cause of any injury." *Id.*

A Texas court's rejection of a similar failure-to-warn claim brought under tragic circumstances explains why the Blythes' marketing defect claim cannot proceed. Parents of a five-month old child killed in a car accident brought suit against a baby car seat manufacturer, alleging in part that their child's death occurred because the seat failed to adequately warn consumers that they must place their children in a rear-facing position. *Gillespie v. Century Prods. Co.*, 936 S.W.2d 50, 51 (Tex. App.—San Antonio 1996, no writ). The court first observed that because such warnings were provided but were not read by the child's parents,

the court was required to "examine the record for evidence showing a causal link between the alleged inadequate warnings" and the child's death.  *Id.* at 52. Turning to the adequacy of the warnings on the baby seat, the court noted that the parents' own testimony indicated that had they read both of the warning labels on the seat they would have placed the seat in the proper rear-facing position.  The court held that "[t]his admission reveals the adequacy of the existing warnings, and consequently, [Defendant's] failure to provide a better warning could not have been a factor causing" the child's death.  *Id.* at 53.

Erica Blythe acknowledged that she would not have used the Bumbo Seat on a raised surface, or even utilized the seat at all, if she had read the warnings accompanying the seat.  Docket Entry No. 15-10 at 13–14.  Because even better warnings—and again, the Court does not see any inadequacy in the post-recall warnings—would not have prevented the injury given that the Blythes did not read any of the numerous warnings provided, the marketing defect claim also fails for lack of causation.

## B.  Seller's Actual Knowledge of a Defect

Although the marketing defect claim fails, in its oral ruling the Court denied summary judgment on the design defect claim for the reasons discussed when dealing with a similar issue in *O'Neal*.  2013 WL 4083281, at *7–8.  But Target raises an additional defense to the design defect claim based on the Texas statute

that protects nonmanufacturing sellers from product liability claims.  Tex. Civ.

Prac. & Rem. Code Ann. § 82.003 (West 2009).  That law sharply curtails the

effect of strict liability that otherwise applies to a nonmanufacturing seller who

sells a defective product.  Under the statute, nonmanufacturing sellers are not liable

for defects unless one of seven exceptions applies. The Blythes contend that Target

is subject to one of those exceptions because it had "actual knowledge of a defect

at the time the seller supplied the product; and [] the claimant's harm resulted from

the defect."  Tex. Civ. Prac. & Rem. Code Ann. § 82.003(a)(6) (West 2009).

The purpose of Chapter 82 is "to protect innocent sellers who are drawn into

products liability litigation solely because of the vicarious nature of that liability."

*See Mix v. Target Corp.*, 759 F. Supp. 2d 876, 880 (W.D. Tex. 2010) (quoting *Gen.*

*Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 262 (Tex. 2006)).  To

effectuate that purpose, the statute makes clear that the seller must have actual

knowledge, not just constructive knowledge, of an alleged defect. Publicly

available information about a product defect—such as stories on the internet, in

newspapers, or lawsuits against the manufacturer—are not sufficient to establish

this exception unless a plaintiff can prove that the seller received that information.

The statute also requires that the knowledge acquired by the defendant must relate

to the defect.  Information about the injury is not enough—the defendant's actual

knowledge must relate to the defect itself.  *See id.* at 880 (explaining in an identical

product defect case brought against Bumbo that the main question before the court was whether Target actually knew of any defects at the time the plaintiff purchased the Bumbo Seat).

In an attempt to satisfy this exception to the statute, the Blythes first argue that the 2007 recall provides the requisite actual knowledge. But as Target notes, the seat in this case was sold in November 2009, after the recall was over and the CPSC had required that new warnings be placed on the package. The purpose of a recall is to correct a problem, which in this case was a lack of clear warnings. To that extent, the 2007 recall succeeded because it improved the warnings contained on the Bumbo Seat. Because the 2007 recall did not address the fact that the Bumbo Seat lacked a restraining device, it does not follow that the 2007 recall alone could have provided Target "actual knowledge" that the Bumbo Seat was defective because it lacked a seatbelt.

The question therefore becomes whether other information of which Target was aware could serve as a basis for a jury concluding that it had actual knowledge of the design defect. Before the Blythes' friend purchased a Bumbo Seat in November 2009, Target had documented numerous customer complaints stating that children had fallen from Bumbo Seats because they were not properly restrained. *See* Docket Entry No. 22-16 at 2–3 (internal Target spreadsheet in which Target recorded over ten specific instances in which children fell from

Bumbo Seats).   One Target customer reported that her six-month-old sustained a

hematoma and skull fracture after falling out of the Bumbo Seat.   Docket Entry

No. 22-14 at 3.   She told Target that "[t]here have been numerous reports of severe

incidents to infants involving this chair and yet the chair is still sold in your store

and many others.").   *Id.*   Target had also responded to several lawsuits that

customers had filed against it alleging that the Bumbo Seat was unsafe because it

lacked a restraining device—including the *Mix* case, in which the plaintiff alleged

a design defect claim and which was served on Target right around the time this

seat was purchased.   *See Mix v. Target Corp.*, No. 3:09-cv-00382, Docket Entry

No. 3 (noting that Target was served on November 10, 2009).   Finally, Target

knew about an international testing agency's 2001 finding that the Bumbo Seat

lacked a restraint system, and therefore, was unsafe for children to use as a

"reclining chair."   The Court concludes that this information provides a basis for a

jury to conclude that Target had actual knowledge of a defect—that children were

falling out of the Bumbo Seat because it lacked a restraining device.[4]   *See*

---

[4] Target claims that the Blythes' evidence of customer complaints is problematic because it does not make clear whether the seats causing those problems were sold before or after the 2007 recall.   But given the number of complaints that post-dated the recall, a jury could conclude that some of the seats complained of were sold after 2007, especially given the short time period in which Bumbo Seats are used (due to the limited time that children can comfortably sit in them). More fundamentally, while the recall itself does not help the Blythes establish actual knowledge of a defect because it dealt with a warning issue, it also does not absolve Target of the pre-recall knowledge it had of the Bumbo Seat's lack of a restraining device.   Because the recall only dealt with warnings, Target's pre-recall knowledge of a design problem the recall did not remedy would still be relevant post-recall.

*Gonzalez v. Reed–Joseph Int'l*, 2013 WL 1578475, at \*13–14 (S.D. Tex. Apr. 11, 2013) (finding a fact issue on the "actual knowledge" exception in a case involving allegations of less actual knowledge of defects).

In making this determination, the Court rejects dicta in the *Mix* case suggesting that evidence that Target knew of other lawsuits bringing the exact same claim was insufficient to create a fact issue because those lawsuits were "unverified allegations."[5]   *Mix*, 759 F. Supp. 2d at 881.  This appears to create a standard in which the defect must be "proven" or the seller must be convinced at some undefined level of the existence of a defect.  That seems an exceedingly difficult standard to apply.   Would a defect be sufficiently proven if the manufacturer had settled product liability claims, but no jury had ever rendered a verdict?   What if one jury found a defect and another jury found in the manufacturer's favor?   What if a jury found a defect but that case was being appealed?

Another judge in this district has implicitly rejected the *Mix* dicta.  *See Gonzalez,* 2013 WL 1578475, at \*13–14.  In *Gonzalez*, a landfill laborer brought a products liability claim against the Screamer Siren, which launches a whistling sound and sparks into the air to control for birds. The product malfunctioned and

---

[5] In *Mix*, the court found that the plaintiffs only introduced evidence that Target received complaints of injuries involving the product that failed to identify the defect.  759 F. Supp. 2d at 881.  Therefore, the court did not have to reach the issue of whether lawsuits alleging a design defect could serve as evidence of actual knowledge.

caused him to suffer severe burns. The court denied summary judgment against the seller and distributer, relying primarily on a few emails employees of the defendants had sent to each other concerning the product in which they said, for instance, that "25% of the bangers and screamers" were not functioning properly. *Id.* at *11–12.  Those emails were based on performance issues that had been reported to the defendants by their other customers.  Even though there were no reported injuries or lawsuits alleging injuries resulting from defects as exist here, the Court found the defendants' emails, in conjunction with the defendants' behavior after receiving customer complaints, sufficient to create a fact issue on whether the seller and distributor had actual knowledge of the defect.

This approach is also consistent with the language of section 82.003—actual is meant to distinguish constructive knowledge in which it would need only be shown that a seller should have known about the defect—and the balance it aims to strike. The statute provides significant protection to nonmanufacturing sellers by placing primary liability for product defects on manufacturers, rather than sellers, because "manufacturers are usually in a better position to recognize and remedy product defects." *Mix*, 759 F. Supp. 2d at 879.  But requiring that that a defect be "proven" to the seller to establish actual knowledge—even if such a standard could be articulated—creates a hurdle that is nearly impossible for plaintiffs to overcome even when, as in this case, the plaintiffs have presented substantial information

from which a jury could conclude that the seller had actual knowledge of the product's defect.  Summary judgment therefore is denied on this issue.

## IV.   CONCLUSION

For the reasons explained above, the Court finds that the post-recall Bumbo Seat adequately warned consumers of the dangers of using the seat on an elevated surface. The Defendants' Motion for Summary Judgment on the Plaintiffs' marketing defect claim (Docket Entry Nos. 14, 15) is therefore **GRANTED**. But the Court determines that the Plaintiffs have presented sufficient evidence concerning Target's actual knowledge of the Bumbo Seat's alleged design defect to survive summary judgment. Therefore, Target's Motion for Summary Judgment (Docket Entry No. 14) based on the "actual knowledge" requirement contained in section 82.003 is **DENIED** with regard to the design defect claim.

**SIGNED** this 26th day of November, 2013.

_____
Gregg Costa
United States District Judge